# UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| VICKI LYNN PAGELS, ) | |
| ) | Case No. 10-71138-SCS |
| *Debtor.* ) | |
| ) | |
| ) | |
| GEOFFREY M. PAGELS, ) | |
| ) | APN 10-07070-SCS |
| *Plaintiff,* ) | |
| ) | |
| v. ) | |
| ) | |
| VICKI LYNN PAGELS, ) | |
| ) | Chapter 13 |
| *Defendant.* ) | |
| ) | |

## MEMORANDUM OPINION

This matter came on for trial on January 12, 2011, upon the Complaint to Deny the Dischargeability of Debt (the "Complaint") filed by Geoffrey M. Pagels (the "Plaintiff") against the debtor, Vicki Lynn Pagels (the "Defendant"). At issue is whether a certain obligation of the Defendant arising under a separation agreement—and subsequently reduced to judgment—is in the nature of alimony, maintenance, or support, and, if so, is nondischargeable in the Defendant's underlying Chapter 13 bankruptcy proceeding. In addition to the trial, this Court simultaneously conducted hearings on related matters, specifically (i) the Plaintiff's Objection to Confirmation filed in the main bankruptcy proceeding and (ii) the Plaintiff's Motion for Summary Judgment filed in the adversary proceeding. At the conclusion of the trial, the Court took the Complaint and Motion for Summary Judgment under advisement. The Court continued the hearing on the

Objection to Confirmation to April 4, 2011.  This Court has jurisdiction over this proceeding

pursuant to 28 U.S.C. §§ 157(b) and 1334(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408

and 1409(a).  Upon consideration of the pleadings and the evidence presented by the parties at

the trial, the Court makes the following findings of fact and conclusions of law pursuant to Rule

7052 of the Federal Rules of Bankruptcy Procedure.


# I.  FINDINGS OF FACT

## A.  Marital Stipulation and Property Settlement Agreement

After many years of marriage, the Plaintiff and the Defendant entered into a Marital

Stipulation and Property Settlement Agreement dated August 26, 2003 (the "Agreement"), "for

the purpose of determining the welfare and maintenance of their two children and to state all of

their respective rights and obligations in the event of a divorce."  Agreement at 1.  The

Agreement states, in relevant part, the following:

> Each party having received legal counseling to their satisfaction,
> the following terms are agreed to voluntarily with full knowledge
> of the effect and enforceability of this agreement.
>
> 1.      The Husband [the Plaintiff] shall pay the Wife [the
> Defendant] the sum of $2,400/month in spousal support beginning
> on October 1, 2003 and continuing until July 31, 2008.  This
> provision is a full and final resolution of the award of spousal
> support in favor of the Wife [the Defendant] now or for any future
> time no matter the circumstances involved.
>
> 2.      The Husband [the Plaintiff] waives the payment of spousal
> support to him by the Wife [the Defendant] now or at any future
> time.
>
> . . . .
>
> 4.      Neither party shall pay child support to the other party.
>
> . . . .

2

6.      At the time the payment of spousal support by the Husband [the Plaintiff] concludes, the Husband [the Plaintiff] shall pay to the Wife [the Defendant] forty percent (40%) of his net military retirement after taxes to the Wife [the Defendant] on the 1st day of each month until the Wife [the Defendant] reaches the age of 62.

7.      The Husband [the Plaintiff] shall have exclusive ownership and possession of the 2000 Honda Accord and shall be solely responsible for payment of all associated costs of the vehicle, including the purchase loan. The Wife [the Defendant] shall have exclusive ownership and possession of the 2002 Town & Country van and shall be solely responsible for payment of all associated costs of the vehicle, including the purchase loan. Each party shall indemnify the other party in full, including all costs of collection, for any sum that the party has to pay on the vehicle loan on the other parties' vehicle unless there is a subsequent agreement in writing by the parties modifying the payment terms on the two vehicle loans.

*Id.* at 1–2. Although the Plaintiff currently appears before the Court on his Complaint, Motion for Summary Judgment, and Objection to Confirmation *pro se*, the Plaintiff received the counsel of Stephen Merrill, Esquire, for the drafting and execution of the Agreement. The Defendant had no legal representation for the drafting or execution of the Agreement; however, the Defendant currently appears before the Court in her bankruptcy case and on the Plaintiff's Complaint with counsel.

## B.  Final Decree of Divorce

The parties obtained a divorce over two years after the execution of the Agreement. Judge Morrison of the Circuit Court of the City of Norfolk entered a Final Decree of Divorce on December 15, 2005 (the "Divorce Decree"). The Divorce Decree affirms, ratifies, and incorporates the Agreement "as modified by the Virginia Beach Juvenile and Domestic Relations District Court Order entered on September 14, 2004" (the "Domestic Relations Order"). Divorce Decree at 3. Neither the Plaintiff nor the Defendant has offered a copy of the Domestic

3

Relations Order into evidence.  This Court assumes that any modification to the Agreement by

the Domestic Relations Order is immaterial.


## C.  State Court Litigation

Because neither party has apparently performed his or her obligations under the

Agreement perfectly, the parties regrettably have found themselves in state court on more than

one occasion.  Judge Hall of the Circuit Court for the City of Norfolk (the "Norfolk Circuit

Court") has summarized the facts concerning the state court proceedings in a Letter Opinion

dated February 3, 2010 (the "Letter Opinion"):

> According to [the Plaintiff's] testimony as well as the
> factual allegations that appear in a Motion for Judgment that he
> filed against [the Defendant] in the Chesapeake Circuit Court . . . ,
> in early 2004 he and [the Defendant] orally agreed to modify [the
> Agreement] in a number of respects.  He testified that the original
> spousal support payment had been intended to cover the payment
> of certain specific sums including the mortgage on the marital
> residence, the second mortgage for a pool, and expense money.
> [The Defendant] was to remain in the house with the two sons until
> the younger one graduated from high school, at which time the
> house would be sold.   The total sums that he agreed to pay
> amounted to $2,400, which was reflected in paragraph 1 of [the
> Agreement]:   "The Husband shall pay the Wife the sum of
> $2,400/month in spousal support beginning on October 1, 2003
> and continuing until July 31, 2008."  July 31, 2008, the termination
> of the agreed-upon support, coincided with the expected
> graduation date of the younger son and the date on which the house
> was to be sold.
>
> Allegedly pursuant to the 2004 oral agreement, [the
> Plaintiff] took custody of the sons; [the Defendant] gave or loaned
> the van to him; and she sold the marital residence which relieved
> her of the payment obligation for certain of the sums that [the
> Plaintiff] viewed as components of his $2,400 support amount.
> [The Agreement], however, was not modified by written
> agreement as he claims he expected it would be.  [The Plaintiff]
> thereafter sought from the Court a modification in his support
> obligation.   The Commissioner in Chancery for his divorce
> recommended denial of that request, to which report [the Plaintiff]

> excepted; and this Court confirmed the Commissioner's report, finding that [the Plaintiff] had not met his burden of proving an agreed reduction in spousal support. [The Plaintiff's] attempts to appeal that adverse finding to the Court of Appeals and to the Supreme Court of Virginia were unsuccessful.
>
> As a result of this experience where a Court refused to acknowledge or enforce [the Plaintiff's] claimed oral agreement and instead adhered to the terms of [the Agreement], [the Plaintiff] apparently determined to seek an equally strict interpretation of [the Agreement's] indemnification obligation against [the Defendant]. His efforts to enforce his right to collect van payments from [the Defendant] commenced in 2005.

Letter Opinion at 3–4.

The Norfolk Circuit Court indeed applied an equally strict interpretation of the Agreement's indemnification obligation against the Defendant, and, after finding that the Defendant neither made payments on the vehicle loan nor indemnified the Plaintiff for same, awarded judgment in favor of the Plaintiff in the amount of $31,061.36. The Letter Opinion does not indicate whether this amount awarded is necessary or intended for the Plaintiff's maintenance or support. The Norfolk Circuit Court also awarded judgment in favor of the Defendant in the amount of $9,035.60 on the Defendant's counterclaim for recovery of payments owed pursuant to paragraph six (6) of the Agreement. The judgments offset, leaving a $21,025.76 judgment payable to the Plaintiff (the "Judgment"). Judge Hall entered the Judgment in accordance with the Letter Opinion by order entered in the Norfolk Circuit Court on February 9, 2010.

### D. The Defendant's Chapter 13 Bankruptcy Proceedings

Approximately one month after entry of the Judgment, on March 13, 2010, the Defendant filed for relief under Chapter 13 of the United States Bankruptcy Code in this Court. The Defendant filed her schedules on April 12, 2010. Schedule E (which denotes unsecured debts

entitled to priority under 11 U.S.C. § 507) lists the Plaintiff's claim in the amount of $31,061.36.

Despite listing the debt on Schedule E, the Defendant noted in the right-hand column, under

"Amount Not Entitled to Priority, if Any," that the entirety of the debt is not entitled to priority.

The Defendant also filed her Chapter 13 Plan of Reorganization on April 12, 2010 (the "Chapter

13 Plan").  Section 11 of the Chapter 13 Plan states that the Judgment "as listed on Schedule E is

alleged to be a debt in the nature of 11 USC [§] 523(a)(15) and is dischargeable in this Chapter

13 case."  Again, although included on her Schedule E, the Chapter 13 Plan treats the Plaintiff's

claim as a nonpriority unsecured claim on which the Plaintiff should expect to receive a fourteen

percent (14%) distribution.[1]

　　　　In response to the treatment of his claim, on May 5, 2010, the Plaintiff filed an Objection

to Confirmation of the Defendant's Chapter 13 Plan (the "Objection to Confirmation").  On May

13, 2010, the Court held a hearing the Objection to Confirmation and concluded that the

Objection to Confirmation not only objects to the confirmation of the Defendant's Chapter 13

Plan but also objects to the dischargeability and treatment of the subject debt.  The Court,

therefore, continued the Objection to Confirmation generally and ordered the Plaintiff to

commence the instant adversary proceeding if the Plaintiff wanted to obtain a determination of

dischargeability.  The Plaintiff thereafter filed the Complaint and a proof of claim on May 24,

---

[1]　　　　The general instructions for the Bankruptcy Schedules state, "Schedules D, E, and F have been designed for the listing of each claim only once.  Even when a claim is secured only in part or entitled to priority only in part, it still should be listed only once.  A claim which is secured in whole or in part should be listed on Schedule D only, *and a claim which is entitled to priority in whole or in part should be listed on Schedule E only*."  Official Bankr. Form 6, Gen. Instructions (emphasis added).  Further, Schedule E itself states, "Only holders of unsecured claims entitled to priority should be listed in this schedule."  *Id.* at Sched. E ¶ 1.  A claim that is neither secured in part nor entitled to priority in part, then, should be listed on Schedule F only.  Here, the Defendant erroneously listed the Plaintiff's claim on her Schedule E.  The Defendant's error, however, does not prevent the Defendant from arguing that the claim is a nonpriority unsecured claim because (i) the Defendant has listed the entirety of the Plaintiff's claim as not entitled to priority, albeit on Schedule E, and (ii) the Defendant's Chapter 13 Plan treats the Plaintiff's claim as a nonpriority unsecured claim.

2010.  The proof of claim represents a claim of $21,025.76 as of the Defendant's petition date and claims both secured and priority status as a domestic support obligation.[2]  The Complaint refers to the Agreement, the Divorce Decree, and the proceedings culminating with the Judgment.  In the Complaint, the Plaintiff asserts that (i)  he has paid the Defendant a total of $144,000.00 in spousal support and (ii)  the Defendant currently receives $691.20 per month from the Plaintiff's United States Coast Guard military retirement income.

To the extent the Plaintiff asserts a legal argument in the Complaint, the Plaintiff argues that the Judgment is nondischargeable pursuant to subsections (5) and (15) of § 523(a) of the Bankruptcy Code.[3]

### E.  The Defendant's Answer

The Defendant filed her answer to the Plaintiff's Complaint in the above-captioned adversary proceeding on June 25, 2010 (the "Answer").  The Answer contains general admissions and denials, with immaterial factual allegations.

---

[2]     On January 5, 2011, the Defendant filed an objection to the Plaintiff's proof of claim (the "Objection to Claim").  The Objection to Claim states, among other things, the following:  (i) that the Plaintiff "has attempted through the proof of claim . . . to classify the debt he asserts the debtor owes as a secured debt at the same time he states it is entitled to priority unsecured status," Objection to Claim ¶ 1; (ii) that "any debt owed by her [the Defendant] to the creditor is general unsecured debt not entitled to priority status," *id.* ¶ 2; (iii) that the "nature and classification of the debt owed by the debtor [the Defendant] to the creditor [the Plaintiff] is currently before this Court in [the instant adversary proceeding]," *id.* ¶ 3; and (iv) that the proof of claim "does not set forth or provide sufficient, if any, supporting documentation as to why it should be entitled to secured or priority unsecured status," *id.* ¶ 4.  Due to the interrelated nature of the issues before the Court in the Plaintiff's Complaint and Objection to Confirmation and in the Defendant's Objection to Claim, this Memorandum Opinion will also address and rule upon the Defendant's Objection to Claim.

[3]     "Bankruptcy Code" shall mean Title 11 of the United States Code.  Unless otherwise noted, all sections cited herein are sections of the Bankruptcy Code.

### F.  The Plaintiff's Motion for Summary Judgment

The Plaintiff filed a Motion for Summary Judgment on December 20, 2010 (the "Motion for Summary Judgment").[4]   The Motion for Summary Judgment recites the same factual allegations and legal arguments as the Complaint and additionally cites to § 1328(a) in support of the Plaintiff's argument that the Defendant's obligation is a domestic support obligation and, as such, is nondischargeable.

The Defendant filed a Response and Memorandum to Plaintiff's Motion for Summary Judgment on January 3, 2011 (the "Response").  The Response contains general admissions and denials, with immaterial clarifications.  The Response also argues that the Divorce Decree "did not obligate the Defendant to pay the Plaintiff a debt in the nature of alimony, maintenance or support."  Response ¶ 5.

### G.  Evidence Produced at Trial

At trial, the Court accepted the Agreement, the Divorce Decree, and the Letter Opinion into evidence without objection.   The Plaintiff provided the following sworn testimony in response to the Court's questions:

> Q.  All right, sir.  Tell me about how -- did -- for example, did Mr.
>     Merrill negotiate the property settlement on your behalf?  Did you
>     negotiate directly with Mrs. Pagels?  Tell me about that process.
>
> A.  There was really no negotiation, quite frankly.  I explained my
>     situation and the situation with the defendant to Mr. Merrill.  He
>     drafted the document.  She received a copy of it, agreed to it.  We
>     went to the Virginia Beach courthouse to see a notary public and
>     signed the document, and it was entered into court.

---

[4]      The Complaint also includes a section entitled "Motion for Summary Judgment."  The arguments presented in the Complaint and in the Motion for Summary Judgment, as filed on December 20, 2010, have no material differences.

Q.  Was Mrs. Pagels represented by legal counsel at that time?

A.  No, Your Honor.

Transcript of Trial held January 12, 2011, at 24–25 (hereinafter "Tr.").

Upon cross-examination of the Plaintiff by counsel for the Defendant, the Plaintiff provided the following testimony:

Q.  In your Exhibit, 3 you filed a Motion for Judgment with the Circuit Court of Norfolk?

A.  Correct.

Q.  The nature of this lawsuit, what was the actual nature of this lawsuit?  What were you seeking?

A.  The lawsuit reflects back to the marital stipulation agreement, first paragraph, Husband shall pay the wife the sum of 2,400 a month spousal support.  That was ordered.  I complied.

Later in the spousal -- the marital separation agreement it talks about -- let's see.  I believe it's paragraph 7 talks about the possession or who shall have possession of the vehicles.

Q.  Let me reword the question.  In this motion for judgment were you asking Ms. Pagels to pay you spousal support?

A.  Negative.

Q.  And then arising from that motion for judgment in the Norfolk Circuit Court Judge Hall, your Exhibit Number 4, Mary Jane Hall, Judge, Norfolk Circuit Court, entered a -- I guess for lack of a better word an opinion letter?

A.  Correct.

Q.  That appears to be dated February 3rd, 2010?

A.  That's right.

Q.  Okay.  At which time it appears that she gave you and Mrs. Pagels, gave each of you the relief you were seeking as far as a judgment?

A.  Correct.

Case 10-71138-SCS   Doc 45   Filed 02/09/11   Entered 02/09/11 16:11:14   Desc Main
Document      Page 10 of 32

    Q. Offsetting claims where you had approximately a net judgment of approximately 21,025.76?

    A. Correct.

    Q. And, again, that was from the motion for judgment where you were seeking reimbursement for the vehicle --

    A. That's correct.

    Q. -- under the property settlement?

    A. That's correct, following the letter of the document.

    Q. And that was from your property distribution?  When you were dividing up the property, she was to take one car?

    A. Correct.

    Q. Okay.  And neither of you were ordered spousal support as a result of Judge Hall's order; is that correct?

    A. That's correct.

*Id.* at 29–30.

## II.  CONCLUSIONS OF LAW

The Plaintiff relies on the plain language of the Bankruptcy Code and argues that the Judgment is nondischargeable under subsections (5) and (15) of § 523(a).[5]  As a preliminary

---

[5]    In responding to a question of the Court, the Plaintiff reiterated his legal argument:

      Q. . . . What -- what else, if anything, would you like me to consider either with respect to your complaint related to the -- your claim that your -- the amounts that Mrs. Pagels owes you under the Norfolk Circuit judgment should not be discharged and as far as your objection to the confirmation of her plan?

      A. Your Honor, I simply -- I guess I would just like to tell you that I feel the statutes identified in my motion for summary judgment [§§ 101(10)(A), 101(14A), 523(a)(15), 1328(a)] stand on their own accord with respect to a favorable award to me.  And they are not -- the claim is not dischargeable.

matter, the Plaintiff, through the Judgment, has enforced his contractual right to indemnification for payments that he has made on the subject vehicle loan. The Defendant's indemnification obligation may be nondischargeable because, if the Defendant's underlying obligation to make the payments on the vehicle loan is nondischargeable, then the Defendant's obligation to indemnify the Plaintiff for nonpayment of same is also nondischargeable on the same basis. *Cf. In re Johnson*, 397 B.R. 289, 298 (Bankr. M.D.N.C. 2008) ("[A]n agreement to indemnify and hold an ex-spouse harmless on a debt is nondischargeable for the same reasons that an obligation to enable a family to maintain shelter is nondischargeable.").[6] Further, the subject debt's status as a debt reduced to judgment does not influence the Court's ruling because, "even if the debts owed by the debtor could be classified accurately as a 'judgment debt,' the issue would not be resolved there. A claim reduced to judgment may still be determined to be nondischargeable under § 523 of the Bankruptcy Code." *West v. West* (*In re West*), 95 B.R. 395, 396 n.1 (Bankr. E.D. Va. 1989) (citing *Combs v. Richardson*, 838 F.2d 112, 117 (4th Cir. 1988)). In the instant matter, the Plaintiff argues that the obligation of the Defendant to indemnify the Plaintiff for payments made on the subject vehicle loan, as reduced to judgment in the Norfolk Circuit Court, is nondischargeable pursuant to § 1328 and subsections (5) and (15) of § 523(a).

In response, the Defendant argues that, if the subject debt is a § 523(a)(15) debt, then the debt is not a § 523(a)(5) debt, and, therefore, is dischargeable in this Chapter 13 bankruptcy proceeding. The Defendant specifically argues that the debt is not in the nature of alimony, maintenance, or support. Upon review of the facts in the instant case and of the applicable law, this Court must conclude that the subject debt is not in the nature of alimony, maintenance, or

---

Tr. at 21–22. Although not cited directly in the Motion for Summary Judgment, the *pro se* Plaintiff additionally cites § 523(a)(5) in his Complaint. Complaint at 3.

[6]     For a more detailed discussion of *In re Johnson*, see Parts II.B and II.C.4, *infra*.

support, and, therefore, is dischargeable in this Chapter 13 bankruptcy proceeding.  A discussion

of the Court's conclusions of law follows.

### A.  Discheargeability of Section 523(a)(5) and (15) Debts
### in Chapter 13 Bankruptcy Proceedings

Section 1328 governs the dischargeability of debts in Chapter 13 bankruptcy

proceedings:

> (a) Subject to [§ 1328(d)], as soon as practicable after completion
> by the debtor of all payments under the plan, and in the case of a
> debtor who is required by a judicial or administrative order, or by
> statute, to pay a domestic support obligation, after such debtor
> certifies that all amounts payable under such order or such statute
> that are due on or before the date of the certification (including
> amounts due before the petition was filed, but only to the extent
> provided for by the plan) have been paid, unless the court approves
> a written waiver of discharge executed by the debtor after the order
> for relief under this chapter, the court shall grant the debtor a
> discharge of all debts provided for by the plan or disallowed under
> section 502 of this title, except any debt—
>
> . . . .
>
> (2) of the kind specified in section 507(a)(8)(C) or in
> paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of
> section 523(a) . . .

11 U.S.C. § 1328(a) (2011).

The "superdischarge" of § 1328(a) provides that a Chapter 13 debtor—after successful

completion of all plan payments and upon certification that the debtor is current on all domestic

support obligations, if any—shall receive a discharge of all debts provided in the plan or

disallowed under § 502, except the debtor shall not receive a discharge of debts expressly

enumerated therein.  *Id.*  The superdischarge of § 1328(a) includes debts of a type described by

§ 523(a)(15),[7] as § 523(a)(15) is not enumerated in that section's exclusive list of exceptions from discharge.[8]    Section 523(a)(5) debts, on the other hand, are nondischargeable under § 1328(a).  *Id.* §§ 523(a)(5), 1328(a); *see also In re Uzaldin*, 418 B.R. 166, 171–72 (Bankr. E.D. Va. 2009) ("[The term 'domestic support obligation'] does not include a debt arising from a property settlement or equitable distribution award. . . .  [I]n Chapter 13, while domestic support obligations are not dischargeable, property settlements and equitable distribution awards are." (citing 11 U.S.C. § 1328(a)(2) (2006); *In re Johnson*, 397 B.R. 289, 295 (Bankr. M.D.N.C. 2008)); *McCollum v. McCollum* (*In re McCollum*), 415 B.R. 625, 629 (Bankr. M.D. Ga. 2009) ("[W]hile a Chapter 13 debtor cannot discharge debts described in § 523(a)(5), nothing in the Chapter 13 discharge provision [§ 1328(a)] prevents him from discharging debts that fall within the scope of its companion provision, § 523(a)(15).").

Here, the Defendant has filed for Chapter 13 relief.  If the subject debt is a § 523(a)(15) debt, the debt is dischargeable in the Defendant's Chapter 13 bankruptcy proceeding under § 1328(a).    If the subject debt is a § 523(a)(5) debt, the debt is nondischargeable in the Defendant's Chapter 13 bankruptcy proceeding pursuant to §§ 523(a)(5) and 1328(a).

---

[7]      Section 523(a)(15) debts are debts other than "domestic support obligations," as that term is defined in § 101(14A), arising from, among other things, separation agreements—*e.g.*, debts in the nature of property settlements or equitable distributions upon the dissolution of a marriage.  11 U.S.C. § 523(a)(15) (excepting from discharge debts "to a spouse, former spouse, or child of the debtor and not of the kind described in [§ 523(a)(5)] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a government unit").

[8]      Section 523(a)(15) debts, however, are nondischargeable under the hardship discharge of § 1328(b).  *See* 11 U.S.C. § 523(a)(15) ("A discharge under . . . [11 U.S.C. § 1328(b)] does not discharge an individual debtor from any debt . . . to a spouse, former spouse, or child of the debtor and not of the kind described in [§ 523(a)(5)] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a government unit . . . ."); *id.* § 1328(c)(2) ("A discharge granted under [§ 1328(b)] discharges the debtor from all unsecured debts provided for by the plan or disallowed under [§ 502], except any debt . . . of a kind specified in [§ 523(a)].").

Accordingly, whether the debt is nondischargeable depends on whether the debt is a § 523(a)(5) debt.  The burden of proof is on the Plaintiff.  *See Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir. 1986) ("The analysis of dischargeability under section 523 must begin with the assumption that dischargeability is favored under the Code unless the complaining spouse, *who has the burden of proof*, demonstrates that the obligation at issue is 'actually in the nature of alimony, maintenance or support.'"); *Brunson v. Austin* (*In re Austin*), 271 B.R. 97, 105 (Bankr. E.D. Va. 2001) ("The objecting spouse bears the burden of proving that the claim at issue is 'actually in the nature of alimony, maintenance or support.'" (quoting *Tilley*, 789 F.2d at 1077)).   A discussion of § 523(a)(5) debts follows.

### B.  "Domestic Support Obligation"

A § 523(a)(5) debt is a "domestic support obligation."   11 U.S.C. § 523(a)(5) (2011). Section 101(14A) defines "domestic support obligation" as follows:

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
> (A) owed to or recoverable by—
>
>> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>>
>> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

(i) a separation agreement, divorce decree, or property settlement agreement;

(ii) an order of a court of record; or

(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

*Id.* § 101(14A).  It is undisputed that the subject debt satisfies subsections (A), (C), and (D) of

§ 101(14A):  the debt is recoverable by the Plaintiff, who is the former spouse of the Defendant,

§ 101(14A)(A); the debt was established in February 2010, before the date of the order for relief

on March 13, 2010,[9] by reason of an order of the Norfolk Circuit Court, § 101(14A)(C); and the

Plaintiff has not assigned the debt, § 101(14A)(D).

The principal issue before the Court, therefore, is whether the subject obligation is in the

nature of alimony, maintenance, or support.   *Id.* § 101(14A)(B).   If so, the debt is

nondischargeable under § 1328.   If not, the debt is dischargeable under § 1328(a).   Judge

Waldrep of the United States Bankruptcy Court for the Middle District of North Carolina has

written extensively on the standards for determining whether an obligation is in the nature of

---

[9]      *See* 11 U.S.C. § 301(b) (2011) ("The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.").

alimony, maintenance, or support in the post-BAPCPA[10] case of *In re Johnson*, 397 B.R. 289

(Bankr. M.D.N.C. 2008):

> [Domestic support obligation] analysis requires the Court to determine whether the payment of [a debt] is in the nature of alimony, maintenance, or support, which is a fact specific analysis. *In re Austin*, 271 B.R. 97, 106 (Bankr. E.D. Va. 2001); *In re Baker*, 274 B.R. 176, 188 (Bankr. D.S.C. 2000); *In re Catron*, 164 B.R. 912, 918–19 (E.D. Va. 1994), *aff'd*, 43 F.3d 1465 (4th Cir. 1994). The complaining spouse has the burden to demonstrate that the obligation at issue is in the nature of alimony, maintenance or support. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); *In re Omine*, 485 F.3d 1305, 1320 (11th Cir. 2007) (stating the burdened party needs to show that the parties intended the obligation as support); *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir. 1986).
>
> Federal bankruptcy law, not state law, determines whether a debt is in the nature of support. *In the Matter of Long*, 794 F.2d 928 (4th Cir. 1986); *In re Hudson*, No. 06-81745, 2007 WL 4219421 at *1 (Bankr. C.D. Ill. Nov. 27, 2007) (2007 WL 4219421); *In re Adams*, 254 B.R. 857, 861 (D. Md. 2000); *see also In re Strickland*, 90 F.3d 444, 446 (11th Cir. 1996) (a debt may be in the "nature of support" even though it would not legally qualify as support under state law); *In re Yeates*, 807 F.2d 874 (10th Cir. 1986) (same). The court must not rely on the label used by the parties or the state court, but must look beyond the label to examine whether the debt actually is in the nature of support or alimony. *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001); *In re Brody*, 3 F.3d 35, 38 (2d Cir. 1993).
>
> [Domestic support obligation] is a term derived from the definition of a nondischargeable debt for alimony, maintenance, and support contained in the former Section 523(a)(5); therefore, case law construing the former Section 523(a)(5) is relevant and persuasive. *Hudson*, 2007 WL 4219421 at *1; *In re Lepley*, No. 07-20344, 2007 WL 2669128 at *2 (Bankr. W.D. Mo. Sept. 6, 2007) (2007 WL 2669128); *In re Knox*, No. 07-11082, 2007 WL 1541957 at *1 (Bankr. E.D. Tenn. May 23, 2007) (2007 WL 1541957); *see In the Matter of Dankert*, No. 07-40109, slip op. at 3 (Bankr. D. Neb. Sept. 27, 2007) (stating that BAPCPA did not

---

[10]    Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (codified as amended in scattered sections of 11 U.S.C.).

change the standard for whether an obligation is in the nature of support).

In the Fourth Circuit, courts look at the mutual or shared intent of the parties to create a support obligation. *Tilley*, 789 F.2d at 1078 (stating that intent is the threshold that must be crossed before any other concerns become relevant); *see In re Yeates*, 807 F.2d 874, 878 (10th Cir. 1986); *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1109–10 (6th Cir. 1983) (showing that the initial inquiry is to determine whether there was intent to create support). The court should look at the parties' intent at the time of the divorce or separation. *E.g.*, *Brody*, 3 F.3d at 38; *Tilley*, 789 F.2d at 1077; *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir. 1984). The labels attached to certain provisions in a separation agreement are not dispositive of their "nature," but the labels are persuasive evidence of the parties' intent. *Tilley*, 789 F.2d at 1077–78 (a label in the agreement erects a "substantial obstacle" for the party seeking to overcome it); *Catron*, 43 F.3d at 2.

Courts of the Fourth Circuit have articulated an "unofficial" test for the intent inquiry, which provides for the court to look at: (1) the actual substance and language of the agreement, (2) the financial situation of the parties at the time of the agreement, (3) the function served by the obligation at the time of the agreement (i.e. daily necessities), and (4) whether there is any evidence of overbearing at the time of the agreement that should cause the court to question the intent of a spouse. *Catron*, 164 B.R. at 919 (citing *Kettner v. Kettner*, No. 91-587-N, 1991 WL 549386 (E.D. Va. Nov. 19, 1991)) (the Fourth Circuit noted that approval of the use of these factors did not preclude the use of other formulae). Furthermore, because this list is non-exclusive and the inquiry is fact intensive, courts should consider all relevant evidence. *Lepley*, No. 07-20344, 2007 WL 2669128 at \*3. Ultimately, courts may look beyond the four corners of a divorce decree or the agreement of the parties to determine the nature of the payments constituting the debts sought to be discharged. *In re Cribb*, 34 B.R. 862, 864 (Bankr. D.S.C. 1983); *see also In re Bristow*, No. 04-50235, 2005 WL 1321996, \*1–2 (Bankr. M.D.N.C. April 22, 2005) (2005 WL 1321996).

*In re Johnson*, 397 B.R. at 296–97 (footnotes omitted). This Court discussed in detail the test discussed in the *In re Johnson* matter prior to the enactment of BAPCPA in *Brunson v. Austin* (*In re Austin*), 271 B.R. 97 (Bankr. E.D. Va. 2001), the language of which remains instructive:

The greatest benefit bankruptcy affords a debtor is the opportunity for a fresh start, free from his onerous economic burdens. For this reason, Congress has sought to delineate only a limited number of exceptions to the dischargeability of debts in bankruptcy, of which bankruptcy courts must construe narrowly. The policy underlying § 523(a)(5), however, "departs from the general policy of absolution or fresh start in order to 'enforce an overriding public policy favoring the enforcement of familial obligation.'" *Robb-Fulton v. Robb* (*In re Robb*), 23 F.3d 895, 897 (4th Cir. 1994) (quoting *Sampson v. Sampson* (*In re Sampson*), 997 F.2d 717, 721 (10th Cir. 1993)); *see also Garza v. Garza* (*In re Garza*), 217 B.R. 197, 200 (Bankr. N.D. Tex. 1998) ("Exceptions to dischargeability are generally subject to narrow construction. However, various courts have ruled that exceptions from discharge for child and spousal support deserve a liberal construction since the policy underlying § 523(a)(5) favors enforcement of support obligation over a debtor's fresh start."); *Zaera v. Raff* (*In re Raff*), 93 B.R. 41, 44 (Bankr. S.D.N.Y. 1988) ("Although a debtor files for bankruptcy to acquire a 'fresh start,' the interest in a fresh start is a matter of federal bankruptcy policy that Congress considered, but resolved in favor of debtors' spouses when it enacted § 523(a)(5).").

The objecting spouse bears the burden of proving that the claim at issue is "actually in the nature of alimony, maintenance or support." *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir. 1986), *cited in In re Taylor*, 252 B.R. 346, 352 (Bankr. E.D. Va. 1999). For the purpose of determining a debt's dischargeability, whether the debt is for support or just a mere property settlement is a matter of federal bankruptcy law. *See Long v. West* (*In re Long*), 794 F.2d 928, 930 (4th Cir. 1986); *Taylor*, 252 B.R. at 352 ("[T]he bankruptcy court must make an independent determination of what constitutes alimony, maintenance or support under federal standards."); *Burns v. Burns* (*In re Burns*), 186 B.R. 637, 641 (Bankr. D.S.C. 1992); *Grasmann v. Grasmann* (*In re Grasmann*), 156 B.R. 903, 907 (Bankr. E.D.N.Y. 1992); *Boyd-Leopard v. Douglass* (*In re Boyd-Leopard*), 40 B.R. 651, 654 (Bankr. D.S.C. 1984). Although federal law controls, state law should not be ignored completely. *See Bedingfield v. Bedingfield* (*In re Bedingfield*), 42 B.R. 641, 645 (S.D. Ga. 1983); *Taylor*, 252 B.R. at 352. The parties' intent controls whether the obligation is in the nature of support or is a property settlement. *In re Crosby*, 229 B.R. 679, 681 (Bankr. E.D. Va. 1998) (noting that "[w]hether payments are 'in the nature of alimony, maintenance, or support' is determined by the intention of the parties that the payments be for support rather than a property settlement" (citing *Long*, 794 F.2d at 931)); *see also Garza*, 217 B.R. at 200 ("[T]he court is to construe

the intent of the parties . . . in creating the obligation and the purpose of the obligation in light of the parties' circumstances at the time of the divorce."); *Grasmann*, 156 B.R. at 908 ("What guides the bankruptcy courts in deciding whether marital obligations [are in the nature of support or a property settlement] is the intent of the state court in fixing the obligation and the purpose of the obligation in light of the parties' circumstances at the time.").

Determining the parties' intent is not an easy task. To make this determination, the Court will consider four general factors: (i) whether, at the time of the agreement, any evidence of overreaching exists, (ii) the language and substance of the agreement, (iii) the parties' financial circumstances at the time of the agreement, and (iv) the role of the obligation at the time of the agreement. *Crosby*, 229 B.R. at 681 (citing *Catron v. Catron (In re Catron)*, 164 B.R. 912, 919 (E.D. Va. 1994), *aff'd*, 43 F.3d 1465, 1994 WL 707966 (4th Cir. 1994)).

. . . .

[Regarding the first factor], [i]n *Kettner v. Kettner*, No. 91-587-N[,] [1991 WL 549386] (E.D. Va. Nov. 19, 1991), Judge Clarke stated:

> In determining whether a spouse's will has been overborne, the court should consider whether both parties were represented by an attorney, whether the terms of the agreement grossly favor one spouse over the other or leave one spouse with virtually no income, the statements of the spouses in court, the age, health, intelligence and experience of the spouses, the bargaining positions of the parties, whether there were any misrepresentations, and whether the creditor spouse had knowledge of the debtor spouses' weakness or inability to fulfill the terms of the agreement. . . .

*Id.* at 4, *quoted in Catron*, 164 B.R. at 919.

[Regarding] the second factor, the Court must address the actual language and substance of the agreement. *See Catron*, 164

B.R. at 919. In this context, the Court should be cognizant of the context in which the obligation arises under the agreement. *See Catron*, 164 B.R. at 919; *Grasmann*, 156 B.R. at 908. . . . Moreover, "[t]he label assigned to a particular payment is a significant factor," *Grasmann*, 156 B.R. at 908, but the court is not bound by the particular label, as it must "look behind the label and determine the true nature of the obligation," *Garza*, 217 B.R. at 201; *see also Catron*, 164 B.R. at 919 ("The label assigned to a particular payment is a significant factor, but not controlling . . . ." (quoting *Kettner*, No. 91-587-N, slip op. at 2–3)); *Boyd-Leopard v. Douglass* (*In re Boyd-Leopard*), 40 B.R. 651, 654 (Bankr. D.S.C. 1984) ("The characterization placed on the award by a state court in the decree is not determinative. The function or purpose which the award was intended to serve or support is the crucial issue."). The method of payment is also probative of whether the debt is in the nature of support. Whether the payment is to be made in a lump sum or over a period of time and whether the payment is to be made directly to the spouse or to a third party are relevant considerations. *See Catron*, 164 B.R. at 918; *Baker v. Baker* (*In re Baker*), 146 B.R. 862, 866 (Bankr. M.D. Fla. 1992); *Peterson v. Peterson* (*In re Peterson*), 133 B.R. 508, 512 (Bankr. W.D. Mo. 1991). Finally, the tax treatment accorded to the debt may also be significant. *Peterson*, 133 B.R. at 512–13.

. . . .

The [third] general factor to consider is the parties' financial situation at the time of the agreement. Several variables may inform the Court's analysis, such as the prior work experience and abilities of the parties, their physical health, potential earning power and business opportunities, and correspondingly their probable need in the future. *See Bedingfield v. Bedingfield* (*In re Bedingfield*), 42 B.R. 641, 647 (S.D. Ga. 1983); *Grasmann v. Grasmann* (*In re Grasmann*), 156 B.R. 903, 908 (Bankr. E.D.N.Y. 1992); *Zaera v. Raff* (*In re Raff*), 93 B.R. 41, 47 (Bankr. S.D.N.Y. 1988). If applicable, the stability of the parties' income at the time of the agreement and whether one spouse has custody of minor children from the marriage are relevant factors to consider. *Catron*, 164 B.R. at 919.

. . . .

The [fourth] general factor to consider is the role the obligation was intended to perform at the time the parties entered into the Agreement. . . .

[T]he court may consider the length of the marriage, who was at fault in the marriage, and if any children were born from the marriage. *See* [*Catron*, 164 B.R. at 919]; *Peterson v. Peterson* (*In re Peterson*), 133 B.R. 508, 512 (Bankr. W.D. Mo. 1991); *Raff*, 93 B.R. at 47. . . .

Whether the debt is for a past or future obligation, allocates debt, or divides property are also relevant variables. *Peterson*, 133 B.R. at 512–13. . . .

Finally, to determine if there was a genuine need for support at the time of divorce, the court may also consider the standard of living enjoyed during the marriage, whether the agreement "serve[d] to provide such daily necessities as food, clothing, shelter, and transportation," *Kettner v. Kettner*, No. 91-587-N, slip op. at 3–4 (E.D. Va. Nov. 19, 1991), *quoted in Catron*, 164 B.R. at 919, whether the award was intended to balance a disparity in incomes, and whether, without the debt at issue, the support award would have been sufficient, *see Grasmann*, 156 B.R. at 908; *Baker v. Baker* (*In re Baker*), 146 B.R. 862, 866 (Bankr. M.D. Fla. 1992); *Peterson*, 133 B.R. at 512; *Raff*, 93 B.R. at 47.

. . . .

The application of these various factors may differ in light of the particular debt being analyzed. Similarly, some factors may weigh more heavily in the context of a particular form of debt.

*In re Austin*, 271 B.R. at 105–09.

*Kettner*, *In re Johnson*, and *In re Austin* delineate the standards by which this Court should assess whether the subject debt is in the nature of alimony, maintenance, or support. Those cases each determined the dischargeability of an obligation arising from a voluntarily executed marital settlement agreement. *Kettner*, 1991 WL 549386, at *1 ("Appellant contends that certain obligations to his former spouse contained in a postmarital contract are not 'in the nature of alimony, maintenance, or support' and therefore are dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(5)(B)."); *In re Johnson*, 397 B.R. at 292 ("On November 23, 2005, Mr. Johnson and Mrs. Snow entered into a Separation Agreement . . . ."); *In re Austin*, 271

B.R. at 101 ("On December 30, 1998, Austin and Brunson entered into a Property Settlement and Separation Agreement . . . ."). In such circumstances, the shared intention of the parties at the time of their respective agreements is the controlling factor. *See Long v. West* (*In re Long*), 794 F.2d 928, 931 (4th Cir. 1986) ("We have previously held, in the context of a voluntarily executed marital settlement agreement, that the proper test for whether payments are alimony lies in the proof of whether it was the parties' intention that the payments be for support rather than as a property settlement." (citing *Melichar v. Ost*, 661 F.2d 300, 302 (4th Cir. 1981), *cert. denied*, 456 U.S. 927 (1982))). Here, the parties have entered into a voluntarily executed marital settlement agreement, the Agreement. The shared intention of the Plaintiff and the Defendant at the time of the Agreement controls, notwithstanding the parties' subsequent breaches or judicial enforcement of the Agreement. Accordingly, the Court applies the facts of the instant case to the aforementioned standards to determine the shared intention of the parties.

### C. Whether the Subject Obligation Is in the Nature of Alimony, Maintenance, or Support

Upon a careful review of the facts in the instant proceeding, the Court must conclude that the parties did not intend for the subject obligation to be in the nature of alimony, maintenance, or support. As such, the subject obligation is dischargeable under § 1328(a).

### 1. The Language and Substance of the Agreement

"[T]he court should examine the actual substance and language of the agreement." *Kettner*, 1991 WL 549386, at *1. The Agreement itself evidences a shared intention to effect a property distribution with respect to the subject debt. The Court first analyzes the terms of the paragraph at issue, paragraph seven (7) of the Agreement. Paragraph seven (7) relieved the

Plaintiff from his duty to make the payments on the vehicle in exchange for relinquishing the exclusive rights of ownership and possession of the vehicle—*i.e.*, in exchange for relinquishing property rights in the vehicle. The Defendant likewise obtained the exclusive rights of ownership and possession in exchange for assuming the duty to make the payments on the vehicle. The indemnity clause provided the Plaintiff with the right to recover any payments he made pursuant to the relevant vehicle loan on which he was contractually liable, which in effect rendered the duty to make the payments on the vehicle to be the Defendant's exclusive duty. The unconditional and permanent exchange of rights and duties with respect to the vehicle, all of which transferred from the Plaintiff to the Defendant, and without explicit regard to the support or maintenance of the parties or their children, evidences a property distribution.

This Court further finds the shared intention to effect a property distribution within the other provisions of the Agreement. Paragraph two (2) of the Agreement provides as follows: "The Husband [the Plaintiff] waives the payment of spousal support to him by the Wife [the Defendant] now or at any future time." The waiver of the payment of spousal support from the Defendant to the Plaintiff at the time of execution of the Agreement and at any time thereafter demonstrates that the parties did not intend the Defendant's duties created in paragraph seven (7) of the Agreement to be in the nature of alimony, maintenance, or spousal support. Further, paragraph four (4) of the Agreement provides as follows: "Neither party shall pay child support to the other party." Paragraph four (4), by relieving each party of the respective burden to pay child support, further demonstrates that the parties did not intend the Defendant's duties created in paragraph seven (7) of the Agreement to be in the nature of child support.[11]

---

[11]     At trial on January 12, 2011, the Defendant testified that she had received child support payments from the Plaintiff. This testimony has no effect on the Court's ruling. No evidence produced at trial suggests that the Defendant owed the Plaintiff child support at any time. The absence of evidence of a child support obligation running from the Defendant to the Plaintiff at the time of the Agreement

This Court also notes what the Agreement does not provide.  For example, the termination of the obligation upon the remarriage or death of the ex-spouse evidences the shared intention of the parties to create an obligation in the nature of alimony, maintenance, or support; the absence of such contingencies, on the other hand, evidences the shared intention of the parties to effect a property distribution.  *See, e.g.*, *Tilley v. Jessee*, 789 F.2d 1074, 1078 n.3 (4th Cir. 1986) (concluding that a certain obligation was not in the nature of alimony after noting that the obligation "would continue despite the remarriage of the wife or death of the husband in direct contrast to the usual operation of marital support payments"); *Bangert v. McCauley* (*In re McCauley*), 105 B.R. 315, 319 (E.D. Va. 1989) ("A wide range of factors may be pertinent to this intent inquiry, including whether the divorce degree [*sic*] contained another provision explicitly for alimony or support and whether, as is typically true of alimony, the obligation terminated on the death or remarriage of the receiving spouse."); *Beiler v. Beiler*, 80 B.R. 63, 64 (E.D. Va. 1987) ("As further evidence that the parties did not agree or intend the said payment to be in the nature of alimony, maintenance or support, or in lieu thereof, wife did not report the sums received as income, nor did husband take a deduction therefor.  Nor was there any provision that husband would be relieved from responsibility for payment in the event of death or remarriage of wife."); *In re Sewell*, No. 07-00777-5-ATS, 2008 WL 8130029, at *3 (Bankr. E.D.N.C. Jan. 3, 2008) ("[T]he fact that his obligation did not terminate in the event of the remarriage or death of Ms. Sewell suggests that this not an obligation for alimony, maintenance or support.").  Here, the Agreement does not provide that the obligation to make payments on the vehicle shall terminate on the death or remarriage of the Plaintiff; in fact, not one of the rights or duties established in paragraph seven (7) of the Agreement is conditioned upon the death or

---

evidences that the obligations of the Defendant arising in paragraph seven (7) of the Agreement are not in the nature of child support.

remarriage of either spouse.  Accordingly, the unconditional obligations established in paragraph seven (7) of the Agreement evidence the shared intention of the parties to effect a property distribution.

This Court will also comment on "whether the agreement is drafted by an attorney and is well structured with separate provisions detailing spousal support and property rights." *Kettner*, 1991 WL 549386, at *1.  "Where there is a well structured drafting that purports to deal with separate issues in totally distinct segments of the document, a party with the burden of proving nondischargeability must overcome a substantial obstacle in respect to those segments that purport to deal with a property settlement." *Id.*  Although Plaintiff obtained the assistance of counsel in drafting the Agreement, the Agreement is not a particularly well-drafted document, at least not with respect to the potential insolvency of either spouse.  The Agreement blends support obligations with property distributions in one document, albeit in separately numbered paragraphs.  The Agreement does not label with specificity the paragraphs concerning obligations in the nature of alimony, maintenance, or support separate from the paragraphs concerning obligations in the nature of a property distribution.  Still, as discussed herein, this Court concludes that the document facially demonstrates the shared intention of the parties to effect a property distribution in paragraph seven (7) of the Agreement.


2.  Whether, at the Time of the Agreement, Any Evidence of Overreaching Exists

"[T]he court should consider whether there is any evidence of overbearing at the time of the agreement that would cause the court to question the intent of a spouse.  If a spouse's will has been overborne, that spouse could not intend to enter either a property settlement or support agreement, and the creditor spouse cannot meet its burden of proving that the spouses' intent was

to enter a nondischargeable support agreement." *Kettner*, 1991 WL 549386, at *2. Here, the Defendant has made no allegations of overbearing or overreaching at the time of the Agreement, nor could she after having successfully enforced the Agreement in state court. The Court's inquiry into overbearing or overreaching, therefore, ends here.

### 3. The Parties' Financial Circumstances at the Time of the Agreement

"[T]he court should consider the financial situation of the parties at the time the agreement was entered into." *Id.* at *2. In concluding whether parties shared an intention to create an obligation in the nature of alimony, maintenance, or support, courts find a showing of need for support on the part of the complainant at the time of the agreement persuasive. *See, e.g.*, *Sampson v. Sampson* (*In re Sampson*), 997 F.2d 717, 725 (10th Cir. 1993) ("Plaintiff's obvious need for support at the time of the divorce is enough to presume that the obligation was intended as support even when it is otherwise identified in an agreement between the parties as property settlement."); *Yeates v. Yeates* (*In re Yeates*), 807 F.2d 874, 879 (10th Cir. 1986) ("The spouse's need for support is a very important factor in determining the intent of the parties."); *cf. In re Austin*, 271 B.R. at 108 ("[T]o determine if there was a genuine need for support at the time of the divorce, the court may also consider . . . whether the award was intended to balance a disparity in incomes, and whether, without the debt at issue, the support award would have been sufficient . . . ."). Common sense dictates that the party with weaker financial means, upon marital separation from a party with stronger financial means, is much less likely to incur an obligation in the nature of alimony, maintenance, or support.

Here, the parties' financial circumstances at the time of the agreement evidence a shared intention to effect a property distribution, not an obligation in the nature of alimony,

maintenance, or support.  The parties testified at trial that the Plaintiff earned more income than the Defendant at the time of separation and divorce.[12]  The provisions of the Agreement—*e.g.*, the Plaintiff's obligation to pay $2,400.00 per month for five years and the Plaintiff's obligation to pay forty percent (40%) of his net military retirement after taxes to the Defendant after completion of the $2,400 per month payments—corroborate the parties' testimony.  Here, given the relative financial positions of the parties at the time of the Agreement, the substantial obligations of the Plaintiff established by the Agreement, and the Plaintiff's waiver of both child support and spousal support in the Agreement, the Court finds that Defendant's obligations in

---

[12]      Upon cross-examination of the Plaintiff by counsel for the Defendant, the Plaintiff testified as follows:

> Q.  At the time you were divorced -- separated who was making more financial income?

> A.  I was, I assume.

Tr. at 31.

        Upon direct examination of the Defendant by counsel for the Defendant, the Defendant testified as follows:

> Q.  Can you just explain a little bit for the record your employment circumstances, your obligations to support over the last three or four years?

> A.  Absolutely.  When the separation first occurred, I was actually working for ICT, which is a telemarketing company, no longer in business here.  ICT Telemarketing is based on hours, so you can go in one day and work an hour and they can send you home without pay.  There was no benefits, no salary.  It was all hourly.  Hours were very minimal at that particular time.

> At the time of separation I was not working completely.  I had just had major surgery, so I was out of work.  And out of work, I didn't have disability insurance or anything like that.

Tr. at 43.

paragraph seven (7) of the Agreement are not obligations in the nature of alimony, maintenance, or support.

### 4.   The Function of the Obligation at the Time of the Agreement

"[T]he court should consider the function served by the obligation at the time of the agreement.  An agreement that serves to provide such daily necessities as food, clothing, shelter, and transportation is indicative of debt intended to be in the nature of support." *Kettner*, 1991 WL 549386, at *2.  *In re Johnson* provides an example of how an agreement to indemnify a former spouse on an obligation that enables one's family to maintain shelter is in the nature of support.  In *In re Johnson*, the debtor-husband, Mr. Johnson, and his ex-spouse, Mrs. Snow, entered into a separation agreement, which provided in relevant part the following:

> Upon conveyance of the property by the husband to wife, the husband agrees to pay any and all indebtedness due Wachovia Bank against said real estate, and the husband agrees to pay said Wachovia Bank debt in full no later than when the above-mentioned Piedmont Federal deed of trust is paid in full. The husband will save harmless and indemnify the wife from the payment of any and all of the indebtedness due Wachovia Bank on said real property. The parties agree to execute the necessary documents to close the provisions of the line of credit and freeze the account whereby no additional sums may be advanced.

*In re Johnson*, 397 B.R. at 293 n.2.  The parties' residence was on the real estate in question.  *Id.* at 293.  Mrs. Snow could not afford to make the payments on the subject debt.  *Id.*  Further, Mr. Johnson knew that Mrs. Snow and their daughter could not remain living on the property unless Mr. Johnson assumed the debt.  *Id.* at 298.   Mr. Johnson made a number of payments but eventually defaulted, leading to the filing of his bankruptcy petition.  *Id.* at 293–94.  Mrs. Snow filed a proof of claim in Mr. Johnson's bankruptcy proceeding, claiming the outstanding principal balance of the indebtedness due on the property.  *Id.* at 294.  Mr. Johnson filed a

Chapter 13 plan, failing to provide for the indebtedness due Wachovia Bank. *Id.* Mrs. Snow thereafter filed an objection to confirmation, claiming her debt as a nondischargeable domestic support obligation pursuant to § 523(a)(5) of the Bankruptcy Code. *Id.*

The bankruptcy court found "that at the time of the Separation Agreement the parties intended Mr. Johnson's payment of the Wachovia Debt to serve as a contribution toward maintenance and support of lodging for Ms. Snow and Meagan Johnson." *Id.* at 298. The bankruptcy court further found that "the agreement to pay the Wachovia Debt was essential to protect the former marital residence, and Mr. Johnson agreed to indemnify and hold Ms. Snow harmless on the debt. . . . [A]n obligation that enables one's family to maintain shelter is in the nature of support, and an agreement to indemnify and hold the former spouse harmless on that debt is nondischargeable under Section 523(a)(5)." *Id.* at 299.

The facts of the instant case are distinguishable. Most significantly, the Defendant, not the Plaintiff, is obligated to make the payments on the debt secured by the van. Further, even though the Agreement provides for a significant spousal support payment from the Plaintiff to the Defendant, the Agreement, unlike the agreement in *In re Johnson*, contemplates the Defendant's ability to assume all liabilities of the van in her individual capacity. The Defendant's intention to indemnify the Plaintiff for costs incurred with respect to the van hardly can demonstrate an intention to provide alimony, maintenance, or support from the Defendant to the Plaintiff, when, in fact, the Agreement contemplates the Plaintiff's ability to support the Defendant rather significantly at $2,400.00 per month over five years.

The function of the subject obligation at the time of the Agreement was to maintain ownership and possession of the van, not to provide alimony, maintenance, or support. The Letter Opinion produces facts outside the Agreement worth mentioning here:

> Mrs. Pagels does not dispute that she has made no payments for the vehicle or that she has failed to indemnify Mr. Pagels for those costs. Notwithstanding [the Agreement's] dictate that "Wife shall have exclusive ownership and possession" of the van, Mrs. Pagels never owned the car or had possession of the title or loan documents for it. She did have the van at the time of [the Agreement]. She testified, however, that in March of 2004, she asked Mr. Pagels to take custody of their two sons and that Mr. Pagels agreed but requested or demanded that she give him the van at that time. She gave him the van, and she purchased a replacement vehicle for herself. Mrs. Pagels has not had the van since she relinquished it to Mr. Pagels. Mr. Pagels testified that she never asked for or demanded either the van or any of the ownership documents. Neither of the parties did anything to cause Mrs. Pagels to have the exclusive ownership and possession of the van required by the agreement. Indeed, the parties apparently disregarded the terms of [the Agreement] in various respects without effecting a formal amendment of its terms . . . .

Letter Opinion at 2–3. Upon separation, the Defendant appears to have had physical custody of the parties' two sons. The evidence tends to show that possession of the van went hand-in-hand with physical custody of the children and that maintaining the payments on the vehicle loan had the incidental benefit of providing transportation for the parties' children. On the other hand, the evidence equally tends to show that possession of the van went hand-in-hand with the party making payments on the vehicle loan. The Court can only speculate whether the Plaintiff would have demanded possession of the van in 2004 if the Defendant dutifully made the requisite payments on the vehicle loan. The Court, however, does not need to speculate on the following: the parties had two cars, a sedan and a van; the Plaintiff took the sedan; the Defendant took the van. The Court notes that the Defendant's assumption of the debt secured by the van was permanent and unconditional, and certainly not conditioned upon the death or marriage of the parties, or the custody or emancipation of the children. The Court, therefore, concludes that physical custody of the children merely informs the motive behind the property distribution and that the incidental benefit to the children of the extra cabin space of the van as opposed to the

sedan does not transform the Defendant's obligation thereon to an obligation in the nature of support.

The events following execution of the Agreement—that the parties disregarded the terms of the Agreement, that the Defendant made no payments on the van, and that the Plaintiff made all payments on the van—do not change the function of the obligation or the parties' shared intention at the time of the Agreement. This Court must look to the intention of the parties *at the time of the Agreement*, and the intention at the time of Agreement, as evidenced above, was to effect a property distribution.

### 5.  Additional Considerations

The Plaintiff's testimony supports the Court's conclusion. In responding to questions regarding his pursuit of the Judgment, the Plaintiff answered as follows: that he was not seeking spousal support; that he was seeking reimbursement for the vehicle under a property settlement; and that the order of the Norfolk Circuit Court did not award the Plaintiff spousal support. *See* Tr. at 29–30. By admitting that the Judgment is not in the nature of spousal support and by failing to provide any evidence that the Judgment is in the nature of child support, the Plaintiff does not satisfy his burden of proof. Because the Plaintiff proceeds *pro se*, however, the Court primarily relies upon the entirety of the evidence discussed herein, and the Court is satisfied that the debt is for reimbursement for the vehicle payments under a property settlement.

### III.  CONCLUSION

The obligation of the Defendant to indemnify the Plaintiff for payments made on the subject vehicle loan, as reduced to judgment, is not a domestic support obligation pursuant to

§ 101(14A), and, therefore, is dischargeable under § 1328(a). The relief sought in the Complaint with respect to the dischargeability of the subject debt shall be denied, and, as such, the Motion for Summary Judgment shall be denied.

Given the Court's ruling that the subject debt is not a domestic support obligation, the subject debt is not entitled to priority under § 507(a)(1). Further, the Plaintiff has provided no evidence to prove that his claim is a secured claim. Accordingly, the objection of the Defendant to the Plaintiff's proof of claim shall be sustained.

The Court shall enter a separate order pursuant to Federal Rule of Bankruptcy Procedure 9021.

The Clerk shall transmit a copy of this Memorandum Opinion to Geoffrey M. Pagels, the Plaintiff; to Vicki Lynn Pagels, the Defendant; to Michael J. Heath, Esquire, counsel for the Defendant; and to R. Clinton Stackhouse, Jr., Esquire, the Chapter 13 Trustee.

IT IS SO ORDERED.

Entered this 9th day of February, 2011, at Norfolk, in the Eastern District of Virginia.

STEPHEN C. ST. JOHN
United States Bankruptcy Judge